Todd D. Carpenter
tcarpenter@carlsonlynch.com
**CARLSON LYNCH LLP**
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: 619-762-1910
Facsimile: 412-231-0246

*Attorney for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN AND JENNIFER POLITI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RING, LLC,<br><br>Defendant. | Case No. ___2:20-cv-1034___<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON:**<br><br>**1. Negligence**<br>**2. Breach of Implied Warranty**<br>**3. California Unfair Competition Law**<br>**4. California Legal Remedies Act**<br>**5. Unjust Enrichment**<br>**6. Breach of Privacy**<br><br>**DEMAND FOR JURY TRIAL** |

## I.   INTRODUCTION

1.     Defendant Ring, LLC ("Ring"), markets smart home security devices, including Wi-Fi enabled video surveillance cameras and video door bells.

2.     Ring's brand is built on its promise of safety and security for its customers' homes, telling customers that its products provide "peace of mind."[1]

3.     However, Ring's lax security standards resulted in third-parties' ability to use the devices to intrude on Ring customers' home – shattering the promised "peace of mind."

4.     Consumers around the country have reported unauthorized individuals accessing their Ring devices, spying on them through the Ring cameras inside their homes, and harassing them through the microphone function on the Ring devices.

5.     Plaintiffs John and Jennifer Politi were some of those consumers.

6.     In early December 2019, an unauthorized user invaded their home and privacy through their Ring camera and microphone, leaving them terrified.

7.     Plaintiffs John and Jennifer Politi bring this class action, individually and on behalf of individuals that similarly suffered, and continue to suffer,

---

[1]   https://shop.ring.com/pages/security-system (last accessed January 31, 2020).

damages as a result of Defendant Ring, LLC's failure to properly secure and safeguard their Ring devices and accounts.

8.     Plaintiffs assert causes of action for negligence, breach of implied warranty, California's Unfair Competition Law, California's Legal Remedies Act, unjust enrichment, and breach of privacy.

## II.   PARTIES

9.     John and Jennifer Politi reside in the State of New York.

10.    Plaintiffs purchased and own various Ring devices including a video doorbell, outdoor video surveillance cameras, and an indoor video surveillance camera.

11.    Ring is a California limited liability company with its principal place of business in Santa Monica, California.

## III.  JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Plaintiffs and some members of the putative class are diverse from Defendant, and the amount in controversy exceeds $5 million, exclusive of interests and costs.

13.    This Court has jurisdiction over Defendant because Defendant Ring is headquartered here; Defendant does substantial business operations in this

district; and a substantial portion of the events and omissions from which the claims arose occurred here.

14.   Venue is also proper in this Court because Ring is headquartered here and a substantial portion of the events and omissions from which the claims arose occurred here.

## IV.   FACTUAL BACKGROUND

15.   Ring markets and sells various home security devices, including home security cameras for use both inside and outside of customers' homes.

16.   These security cameras operate on the customers' Wi-Fi network, which enables the customer to view the video stream and operate a two-way talk function from their phones, tablets, and/or computers.

17.   In marketing its products, Ring markets safety, security, and "peace of mind" to its customers.

18.   Ring represents to its customers that their privacy is protected by Ring: "guiding every action we take, is respect for the privacy and security of our neighbors (what we call our customers). This includes giving our neighbors effective, easy-to-use and affordable products and services to help protect their

homes. It also means taking extremely seriously the privacy, security and control of their devices and personal information."[2]

19.    Ring further promised:

"We put your security first. That includes your privacy too."
"Ring will continue to innovate on behalf of our neighbors to help make their neighborhoods safer. We will do so with our neighbors, their privacy, and the security of their information at the top of our priority list."
"We have taken measures to help secure Ring devices from unauthorized access"[3]

20.    Contrary to its representations, Ring employed wholly lax security standards – failing to implement even basic cybersecurity protections against unwanted access to customers' Ring accounts and devices.

21.    For example, Ring permits customers to use the most rudimentary of passwords for their Ring accounts through which their Ring cameras are accessible and does not require the changing of passwords at any interval.

22.    Additionally, Ring did not require two-factor authentication for access to its accounts.

23.    Nor does Ring notify its customers when a login occurs from a new device or IP address not previously associated with the account, provide

_____

[2] https://shop.ring.com/pages/privacy (last accessed January 31, 2020).
[3] https://shop.ring.com/pages/privacy (last accessed January 31, 2020).

customers with access to view previous login attempts, or check for concurrent sessions activated from one account at the same time.

24.    As another example, Ring offers no protections against automated attempts to log into its services, such as locking a user out after a certain number of failed attempts or requiring a captcha check to ensure the user is not a bot. Instead, Ring permits repeated and unlimited attempts to try new password combinations to access its customers' accounts.

25.    Such security measures are routine for most internet-based and cloud-based accounts.

26.    Many companies offering internet-based accounts check a users' password against known compromised passwords for their email address. Again, Ring does not.

27.    By failing to implement proper security measures, Ring leaves its customers vulnerable and unsecured.

28.    As a result of Ring's security failures, third-parties were able to access and control the Ring devices, intruding into Ring customers' homes and into their "peace of mind."

29.    Ring has known for quite some time that it was leaving its customers exposed to such privacy invasions.

30.     As one report, dating back to January 2019, explained: "Ring has a history of lax, sloppy oversight when it comes to deciding who has access to some of the most precious, intimate data belonging to any person: a live, high-definition feed from around — and perhaps inside — their house."[4]

31.     Eleven months later, Ring fared no better in its security measures, with one article explaining how Ring put its profits before its consumers' privacy: "Security is a trade-off with efficiency. Ring may not want to have stricter checks in place so as to not raise barriers for its users. . . . But even with this trade-off in mind, Ring has made decisions to not provide users alerts with new logins or other protections."[5]

32.     Waves of reports have surfaced about hackers harassing people through Ring devices.[6]  Rather than acknowledge its failures, Ring placed the blame squarely on its customers and their alleged failure "to deploy security best practice."[7]

_____

[4]     https://theintercept.com/2019/01/10/amazon-ring-security-camera/     (last accessed January 31, 2020)
[5]     https://www.vice.com/en_us/article/epg4xm/amazon-ring-camera-security (last accessed January 31, 2020).
[6]     *Id.*
[7]     *Id.*

33.     Plaintiffs purchased a Ring doorbell approximately 1.5 years ago from a local store.  Thereafter, they purchased Ring cameras for outside of their house as well as an indoor camera, also from a local store.

34.     In order to use the Ring devices after purchase, Plaintiffs had to create Ring accounts.

35.     On or about December 9, 2019, Plaintiffs' son bounded into Plaintiffs' room, terrified because a male voice was calling out from the first floor asking if anyone was home.

36.     Plaintiff Mr. Politi was unable to find an intruder, so Plaintiffs told their children it must have been coming from a neighbors' house.

37.      The next night the Plaintiffs were in bed when their children came running into their room again because they heard a male voice downstairs humming a scary tune.

38.     Plaintiffs then heard what sounded like a siren alarm coming from their first floor.

39.     Plaintiff Mr. Politi went downstairs and did not see anyone in the house, but heard a male voice calling out "what's up bro?," asking if Mr. Politi could hear him, and telling Mr. Politi to "come here."

40.     At this point, Mr. Politi saw lights displayed on the ring indoor camera and realized that the voice and siren were coming from it.

41.    He quickly unplugged the Ring device.

42.    Mr. Politi later discovered that the lights displayed means the camera is being accessed.

43.    He recalls seeing these same lights displayed at times over the past year that they have had the device, meaning unauthorized individuals have watched the Politi family in the past.

44.    Mr. Politi called Ring about the shocking privacy invasions, but Ring simply told the Plaintiff to change his password.

45.    Since the incident, Plaintiffs have not used the Ring indoor camera because it is not secure, which means the camera that cost Plaintiffs over $100 is currently useless to them.

46.    Mr. Politi also posted a notice on Ring's "Ring Neighborhood" social media site to warn other Ring users about the possibility of a hack and the inadequate security measures. However, Mr. Politi's warning post was swiftly removed by Ring.

47.    Plaintiffs' children are still traumatized by the experience.

## V.    CLASS ACTION ALLEGATIONS

48.    Plaintiffs bring this action individually and as a class action on behalf of the following Nationwide Class and Unauthorized Access subclass (collectively the "Class"):

### Nationwide Class

All persons in the United States (including its Territories and the District of Columbia) who purchased any Ring internet-based video security camera during the applicable limitations period.

### Unauthorized Access Subclass

All persons in the United States (including its Territories and the District of Columbia) who purchased any Ring internet-based video security camera during the applicable limitations period and whose Ring account/camera was accessed by an unauthorized third party.

49.    Excluded from the Class is Defendant and its officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class are any judicial officers presiding over this matter, members of their immediate family, and members of their judicial staff.

50.    This action may properly be maintained as a class action and satisfies the requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy.

51.    **Numerosity.** The members of the Class are so numerous that joinder would be impracticable.  Plaintiffs believe the number of Class members exceeds 10,000.

52.    **Commonality.** There are common questions of law and fact that predominate over questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to:

a.   whether Defendant owed a duty to Plaintiffs and members of the Class to provide adequate security measures for using their internet-based video security products;

b.   whether Defendant failed to provide reasonable security measures for using their internet-based video security products;

c.   whether Defendant negligently or otherwise improperly allowed subclass members' surveillance cameras to be accessed by third parties;

d.   whether such unauthorized access constitutes an invasion of the subclass members' privacy;

e.   whether Defendant breached implied warranties to Plaintiffs and the Class;

f.   whether Plaintiffs and members of the Class were injured and suffered damages as a result of Defendant's conduct;

g.   whether Defendant's actions, in failing to provide reasonable security measures for the security of its internet-based video products, proximately caused the injuries suffered by Plaintiffs and members of the Class;

h.   whether Defendant's actions were unfair and/or fraudulent; and

i.      whether Plaintiffs and members of the Class are entitled to damages and, if so, the measure of such damages.

53.   **Typicality.** Plaintiffs' claims are typical of the claims of the absent class members and have a common origin and basis.  Plaintiffs and Class members are all persons and entities injured by Defendant's failure to maintain adequate security features.  Plaintiffs' claims arise from the same practices and course of conduct giving rise to the claims of the absent Class members and are based on the same legal theories and the same misfeasance and malfeasance of Defendant. If prosecuted individually, the claims of each Class member would necessarily rely upon the same material facts and legal theories and seek the same relief.

54.   **Adequacy.** Plaintiffs will fully and adequately assert and protect the interests of the absent Class members and have retained Class counsel who have considerable experience in class action litigation concerning corporate data security and the resources necessary to prosecute this case.  Neither Plaintiffs nor their attorneys have any interests contrary to or conflicting with the interests of absent class members.  Plaintiffs are members of both the Nationwide Class and of the Unauthorized Access Subclass.

55.   This action may properly be maintained as a class action and satisfies the requirements of Fed. R. Civ. P. 23(b)(3): predominance and superiority.

56.     The questions of law and fact common to all Class members predominate over any questions affecting only individual class members.

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the absent Class members' claims is economically infeasible and procedurally impracticable. Class members share the same factual and legal issues and litigating the claims together will prevent varying, inconsistent, or contradictory judgments, and will prevent delay and expense to all parties and the court system through litigating multiple trials on the same legal and factual issues.  Class treatment will also permit Class members to litigate their claims where it would otherwise be too expensive or inefficient to do so. Plaintiffs know of no difficulties in managing this action that would preclude its maintenance as a class action.

## VI.     CHOICE OF LAW FOR NATIONWIDE CLAIMS

58.     The State of California has a significant interest in regulating the conduct of businesses operating within its borders. California, which seeks to protect the rights and interests of all California residents and citizens of the United States against a company headquartered and doing business in California, has a greater interest in the nationwide claims of Plaintiffs and Nationwide Class members than any other state and is most intimately concerned with the claims and outcome of this litigation.

59.     The corporate headquarters of Ring located in Santa Monica, California, is the "nerve center" of its business activities – the place where its high-level officers direct, control, and coordinate the company's activities, including its data security functions and major policy, financial, and legal decisions.

60.     Ring's response to the intrusions at issue here, and corporate decisions surrounding such response, were made from and in California.

61.     Ring's breaches of duty to Plaintiffs and Class members emanated from California.

62.     Application of California law to the Class with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because California has significant contacts and a significant aggregation of contacts that create a state interest in the claims of Plaintiffs and the Class.

63.     Under California's choice of law principles, which are applicable to this action, the common law of California applies to all the nationwide common law claims of Class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders including those that elect to be governed by California law; accordingly, California's Unfair Competition Law and California's Legal Remedies Act may be applied to non-resident consumer plaintiffs as against resident-defendant.

## VII.   CAUSES OF ACTION

### COUNT I – NEGLIGENCE

### On behalf of the Unauthorized Access Subclass

64.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

65.     Defendant knew that Plaintiffs and the Subclass used Defendant's products as security cameras in and around their homes and knew the sensitivity and privacy rights that coincide with such use. Indeed, Defendant marketed its products with the expectation of providing security.

66.     Defendant owed Plaintiffs and the Subclass a common-law duty to exercise reasonable care to protect Plaintiffs' and the Subclass members' privacy while using Defendant's internet-based video surveillance products.

67.     Defendants owed Plaintiffs and the Subclass a duty to provide reasonable and proper safeguards so that the products and services provided by Defendants could not be easily compromised.

68.     It was foreseeable that Plaintiffs and the Subclass would be harmed by Defendant's failure to provide adequate safeguards for its customers' Ring accounts and security cameras.

69.     Defendant breached their duty by failing to provide such reasonable safeguards as are expected and typical in the industry in order to protect its customers' accounts from unauthorized access.

70.     Failure to provide such safeguards resulted in hackers gaining unauthorized access to Plaintiffs' and the Subclass members' security cameras placed in and around their private homes in order to terrorize, threaten, harass, and/or endanger them.

71.     Plaintiffs and the Subclass were harmed by Defendant's failure to exercise reasonable care.

72.     But for Defendant's failure to adequately safeguard its Ring accounts and cameras, hackers would not have gained access to Plaintiffs' and the Subclass members' accounts and cameras, and Plaintiffs and the Subclass would not have suffered the injuries inflicted upon them.

73.     Indeed, Plaintiffs' and Subclass members' harm was a proximate result of Defendant's breach of its duty of care.

## COUNT II – BREACH OF IMPLIED WARRANTY

### On behalf of the Nationwide Class

74.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

75.     Defendant is a merchant with respect to the Ring devices and their related services.

76.     Plaintiffs and the Class purchased Ring camera devices.

77.     An implied warranty that the goods were merchantable arose by operation of law as part of the sale.

78.     Ring's products were unfit for their ordinary use and not merchantable because they are unsecure and can easily be hacked by third parties.

79.     At the time of purchase, Plaintiffs and the Class did not know that the products were not merchantable and unsafe for the ordinary use.

80.     Indeed, Ring markets its products as providing safety, security, and "peace of mind" to its customers.

81.     Ring tells its customers that their privacy is protected by Ring.

82.     Ring informs its customers that: "guiding every action we take, is respect for the privacy and security of our neighbors (what we call our customers). This includes giving our neighbors effective, easy-to-use and affordable products and services to help protect their homes. *It also means taking extremely seriously the privacy, security and control of their devices and personal information*."[8]

83.     Ring further promised safety and security its customers:

_____

[8]     https://shop.ring.com/pages/privacy (last accessed January 31, 2020).

"We put your security first. That includes your privacy too."

"Ring will continue to innovate on behalf of our neighbors to help make their neighborhoods safer. We will do so with our neighbors, their privacy, and the security of their information at the top of our priority list."

"We have taken measures to help secure Ring devices from unauthorized access"[9]

84.     Plaintiff Mr. Politi notified Ring of the defects in the products after discovery of the same, but Ring did nothing to remedy the defects – merely telling Plaintiff to change his account password.

85.     Indeed, Ring's response to the wide-spread unauthorized access of its product has been to blame it customers, despite the security failures emanating from Ring's products and practices.

86.     As a result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and the Class have suffered damages representing the difference between the value of the goods as delivered and the value they would have had if they had been as warranted.

---

[9]     https://shop.ring.com/pages/privacy (last accessed January 31, 2020).

## COUNT III – VIOLATION OF CALIFORNIA'S UNFAIR

## COMPETITION LAW

### On behalf of the Nationwide Class

87.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

88.     Defendant knew or should have known that their data security practices were inadequate to safeguard Plaintiffs' and the Class members' personal information and that the risk of unauthorized access was highly likely.

89.     Despite this knowledge, Ring falsely represented that its products were secure and would provide "peace of mind" to Plaintiffs and the Class.

90.     Ring is both organized under the laws of California and headquartered in California.

91.     Ring has violated California Business and Professions Code § 17200, *et. seq.*, by engaging in unlawful, unfair, or fraudulent business acts and practices and unfair, deceptive, untrue, or misleading advertising that constitutes acts of "unfair competition" as defined in Cal. Bus. Prof. Code. § 17200 with respect to the goods and services it provided to Plaintiffs and the Class, including but not limited to the following:

a.  by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard from unauthorized access;

b.  by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Plaintiffs and the Class; and

c.  by failing to disclose to Plaintiffs and the Class that Ring's data security systems failed to meet legal and industry standards for the protection from unauthorized access.

92.    The conduct and practices described above emanated from California where decisions related to Ring's advertising and data security were made.

93.    The conduct and practices described above were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and the Class members.

94.    Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and the members of the Class.

95.     Plaintiffs seek relief, individually and on behalf of the class, under Cal. Bus. Prof. Code § 17200, et. seq., for restitution and injunctive relief, along with attorneys' fees and costs.

96.     Had Ring disclosed to Plaintiffs and Class members that its systems were not secure and thus vulnerable to attack, Plaintiffs and the Class members would not have purchased Ring's security products.

97.     As a direct and proximate result of Ring's material misrepresentations and omissions, Plaintiffs and Class members have suffered injury-in-fact, monetary and non-monetary damages, as described herein.

98.     Plaintiffs' and the Class members' injuries include the loss associated with purchase of Ring products that are unsafe for their ordinary use, and the loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of Ring's security failures.

**COUNT IV – CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")**

**On behalf of the Nationwide Class**

99.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

100.    Plaintiffs bring this claim individually and on behalf of the Class.

101.   Plaintiffs are "consumers," Defendant is a "person," and the Ring products constitute a "good" and/or "service" within the meaning of the CLRA. Cal. Civ. Code § 1761(a) – (d).

102.   Defendants' sale and advertisement of the Ring devices and services constitute "transactions" within the meaning of the CLRA.  Cal. Civ. Code § 1761(e).

103.   The CLRA declares as unlawful the following unfair methods of competition and unfair or deceptive acts or practices when undertaken by any person in a transaction intended to result, or which results in the sale of goods to any consumer:

> (5) Representing that goods … have . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .
>
> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are another.
>
> (9) Advertising goods . . . with intent not to sell them as advertised.
>
> Cal. Civ. Code § 1770(a)(5), (7) and (9).

104.   Ring represents its products as providing safety, security, and "peace of mind" to its customers.

105.   Ring tells its customers that their privacy is protected by Ring.

106.   Ring informs its customers that: "guiding every action we take, is respect for the privacy and security of our neighbors (what we call our customers). This includes giving our neighbors effective, easy-to-use and affordable products and services to help protect their homes. ***It also means taking extremely seriously the privacy, security and control of their devices and personal information***."[10]

107.   Ring further promised safety and security its customers:

"We put your security first. That includes your privacy too."
"Ring will continue to innovate on behalf of our neighbors to help make their neighborhoods safer. We will do so with our neighbors, their privacy, and the security of their information at the top of our priority list."
"We have taken measures to help secure Ring devices from unauthorized access"[11]

108.   Defendant knew or should have known that such representations would mislead consumers so to alter a consumer's decision to purchase Ring products.

109.   Defendants' violations of the CLRA proximately caused injury in fact to Plaintiff and the Class.

110.   Plaintiff and the Class members purchased Defendants' Ring video security products on the belief that they would receive a substantially safer

---

[10]   https://shop.ring.com/pages/privacy (last accessed January 31, 2020).
[11]   https://shop.ring.com/pages/privacy (last accessed January 31, 2020).

product than they did. Indeed, no consumer would purchase the Ring products unless he or she believed that their privacy inside their homes would remain protected.

111.  The safety and security of Ring's products was a material factor in Plaintiffs' and the Class members' decision to purchase and use the Ring video security products. Since Plaintiff and the class members would not have purchased the products had they known that the products were unsafe and that hackers may gain access into their private lives through the product account, Plaintiff and each Class member was injured by the mere fact of their purchase.

112.  Pursuant to Cal. Civ. Code § 1782(d), Plaintiffs, individually and on behalf of the other members of the Class, seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

## COUNT V – UNJUST ENRICHMENT

### On behalf of the Nationwide Class

113.  Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

114.  Ring has benefitted from the Plaintiffs' and Class members' purchase of the unsafe Ring products.

115.   Ring has retained these benefits and its profits while Plaintiffs and the Class did not receive a product of the quality, use, and value that any reasonable consumer would expect, nor the product as advertised by Ring.

116.   Ring should disgorge the profits received through its deceptive withholding of benefits that Plaintiffs and Class should have received with the products, and without which render the products useless.

## COUNT VI – BREACH OF PRIVACY

### On behalf of the Unauthorized Access Subclass

117.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

118.   Plaintiffs bring this claim individually and on behalf of the Unauthorized Access Subclass for violation of privacy – intrusion upon seclusion.

119.   Plaintiffs and the Subclass members had a reasonable expectation of privacy in the recording and viewing of their private lives.

120.   Defendant knew that Plaintiffs and the Subclass used Defendant's products as security cameras in and around their homes and knew the sensitivity and privacy rights that coincide with such use. Indeed, Defendant marketed its products with the expectation of providing security.

121.   Defendant owed Plaintiffs and the Subclass a duty to exercise reasonable care to protect Plaintiffs' and the Subclass members' privacy while using Defendant's internet-based video surveillance products.

122.   Defendant owed Plaintiffs and the Subclass a duty to provide reasonable and proper safeguards so that the products and services provided by Defendant could not be easily compromised.

123.   Defendant intentionally and knowingly failed to implement and provide adequate security safeguards to prevent unauthorized access into its customers' private lives.

124.   In doing so, Defendant knew the consequences – unauthorized access into its customer's lives – was likely to, and did, occur.

125.   It was foreseeable that Plaintiffs and the Subclass would be harmed by Defendant's failure to provide adequate safeguards for its customers' Ring accounts and security cameras.

126.   Defendant breached its duty by failing to provide such reasonable safeguards as are expected and typical in the industry in order to protect its customers' accounts from unauthorized access.

127.   Failure to provide such safeguards resulted in hackers gaining unauthorized access to Plaintiffs' and the Subclass members' security cameras

placed in and around their private homes in order to terrorize, threaten, harass, and/or endanger them.

128.   Ring's intrusion into Plaintiffs' and Subclass members' private lives and homes was offensive to a reasonable person.

129.   Plaintiffs and the Subclass were harmed by Defendant's failure to exercise reasonable care, suffering mental anguish and/or suffering as a result of the intrusion.

130.   Ring's conduct was the proximate cause of the intrusion into Plaintiffs' and the Subclass members' private lives.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request for themselves and all others similarly situated, the following relief:

a.   For an order certifying this action as a class action, defining the Class and Subclass as requested herein, appointing the undersigned as Class counsel, and finding Plaintiffs to be proper representatives of the Class and Subclass.

b.   For a permanent injunction and any other equitable relief as necessary to protect the interest of the Class, including:

i.   An order declaring Defendant's conduct alleged herein unlawful and prohibiting Defendant from engaging in the wrongful and unlawful acts; and

ii.    Requiring Defendant to develop and adopt appropriate security protocols to protect its consumers' accounts, personal information, and privacy.

c.    An award of all recoverable damages, as well as attorneys' fees and costs recoverable under the claims pleaded herein, as well as any such other relief as is just and proper.

## IX.    DEMAND FOR JURY TRIAL

**Plaintiffs demand a trial by jury on all issues so triable.**

Date: January 31, 2020                    Respectfully submitted,

**CARLSON LYNCH LLP**

*/s/ Todd. D. Carpenter*
Todd D. Carpenter
tcarpenter@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Telephone: 619-762-1910
Facsimile: 412-231-0246

*To be admitted pro hac vice*:
Gary F. Lynch
Edward Ciolko
Kelly K. Iverson
**CARLSON LYNCH LLP**
1133 Penn Avenue, Floor 5
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246

*Attorney for Plaintiffs and the Proposed Classes*